**David KAVANAGH, Plaintiff–Appellant,**

v.

**GRAND UNION COMPANY, INC., Defendant–Appellee.**

**Docket No. 98–7696.**

United States Court of Appeals, Second Circuit.

Argued: June 2, 1999.

Decided: Sept. 28, 1999.

Tara A. Kavanagh, Pelletreau & Pelletreau, LLP, Patchogue, NY, Attorneys for Plaintiff–Appellant.

Mark E. Tabakman (Jedd Mendelson, of counsel), Grotta, Glassman & Hoffman, P.A., Roseland, NJ, Attorneys for Defendant–Appellee.

Before: MESKILL and WALKER, Circuit Judges, and KORMAN, District Judge.*

Judge KORMAN dissents in a separate opinion.

JOHN M. WALKER, JR., Circuit Judge:

Plaintiff-appellant David Kavanagh has sued defendant-appellee Grand Union Company, Inc., under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, seeking hourly overtime wages for the sometimes large amount of time he spent driving between his home and the Grand Union stores at which he performed mechanical services. Between 1994 and 1996, Kavanagh was periodically employed by Grand Union as a refrigerator and utility mechanic. He did not have a fixed work location, but instead was required to travel to various of Grand Union's more than fifty stores in Connecticut and New York, including some in upstate New York. Kavanagh resided in New York on Long Island, first in Patchogue and then in Bellport. He received his work assignments from Grand Union over the telephone. On some days, he would travel to more than one site.

Kavanagh was not a member of a union. He was paid an hourly wage of ten dollars and worked forty-hour weeks. Kavanagh was required to be at the site to which he was assigned by 8:00 a.m. and his work day ended at 4:30 p.m., after which he would return to his home. Grand Union compensated Kavanagh for the time he spent during the day traveling between job sites, but not for his travel time between his home and the first job of the day, nor between the last job of the day and his home. While Kavanagh occasionally used a Grand Union vehicle, he usually traveled in his own truck, carrying with him all of the equipment he needed to make repairs. Some of the equipment belonged to him,

some to Grand Union. When he used his own vehicle, Kavanagh was compensated for mileage and gas, and when he drove Grand Union's vehicle he was reimbursed solely for gas expenditures. Although sometimes he was stationed at a single site for a week, Kavanagh returned home every night because Grand Union reserved the right to change his schedule. Kavanagh alleges that he traveled an average of seven to eight hours a day, including travel to and from his home, depending on his work locations. According to Kavanagh, Grand Union owes him approximately $37,605 in overtime compensation.

The district court granted summary judgment to Grand Union and dismissed Kavanagh's claims. For the reasons set forth below, we affirm.

## DISCUSSION

The FLSA was enacted to give "specific minimum protections to *individual* workers and to ensure that *each* employee covered by the Act would receive '[a] fair day's pay for a fair day's work' and would be protected from 'the evil of "overwork" as well as "underpay."' " *Barrentine v. Arkansas–Best Freight Sys. Inc.*, 450 U.S. 728, 739, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981) (alteration in original) (quoting *Overnight Motor Transp. Co. v. Missel,* 316 U.S. 572, 578, 62 S.Ct. 1216, 86 L.Ed. 1682 (1942) (quoting 81 Cong. Rec. 4983 (1937) (message of President Roosevelt))). To accomplish this purpose, the FLSA prohibits employers from requiring an employee to work more than forty hours per week unless the employee is compensated for the overtime at a rate not less than one and one-half times his regular rate of pay. *See* 29 U.S.C. § 207(a)(1).

An employer is not required, however, to compensate an employee for all of the employee's time that is associated with

* The Honorable Edward R. Korman, of the United States District Court for the Eastern District of New York, sitting by designation.

work. Under the Portal–to–Portal Act, 29 U.S.C. § 254(a), an employer is not required to pay an employee overtime for activities such as:

(1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and

(2) activities which are preliminary to or postliminary to said principal activity or activities,

which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities.

29 U.S.C. § 254(a). One of the Portal–to–Portal Act's implementing regulations specifically provides that ordinary commuting is not compensable under the FLSA:

An employee who travels from home before his regular workday and returns to his home at the end of the workday is engaged in ordinary home to work travel which is a normal incident of employment. This is true whether he works at a fixed location or at different job sites. Normal travel from home to work is not worktime.

29 C.F.R. § 785.35. The Portal–to–Portal Act recognizes an exception where there is either

(1) an express provision of a written or nonwritten contract in effect, at the time of such activity . . . ; or

(2) a custom or practice in effect, at the time of such activity, at the establishment or other place where such employee is employed, covering such activity, not inconsistent with a written or nonwritten contract. . . .

29 U.S.C. § 254(b).

The district court dismissed Kavanagh's FLSA claim based on the Portal–to–Portal Act. It noted that Kavanagh conceded that Grand Union had neither a contract nor a policy of compensating travel time that might entitle him to the compensation he seeks.

 We affirm the district court's decision. Although Kavanagh's situation strikes us as inequitable, nothing in the pertinent statutes and regulations requires Grand Union to compensate Kavanagh for his travel time. While we need not identify a particular regulation exempting an individual from the Portal–to–Portal Act in order to find that compensation is required, *see Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944); 29 C.F.R. § 785.2 ("The ultimate decisions on interpretations of the [Fair Labor Standards Act] are made by the courts."), we are not free to disregard a regulation precluding compensation when that regulation represents a permissible construction of the statute, *see Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843 & n. 11, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984); *Imada v. City of Hercules*, 138 F.3d 1294, 1297 (9th Cir.1998). Our dissenting colleague insists that we owe far less deference to interpretive guidelines of this nature. *See infra* at [6–7]. Even so, we accept the relevant guideline here because we find it fundamentally sound and consistent with the statute.

Here, 29 C.F.R. § 785.35 specifically provides that employers are not required to compensate employees for their "[n]ormal travel" between home and work. We interpret "normal travel," as used in this regulation, to refer to the time normally spent by a specific employee traveling to work. The term does not represent an objective standard of how far most workers commute or how far they may reasonably be expected to commute. Instead, it represents a subjective standard, defined by what is usual within the confines of a particular employment relationship. This construction is consistent with the overall regulatory scheme and with the interpretations given by other courts and the Department of Labor ("DOL") itself when confronted with similar cases. *See, e.g.,*

*United Transp. Union Local 1745 v. City of Albuquerque,* 178 F.3d 1109, 1120–21 (10th Cir.1999) (bus drivers' travel time to and from first and last shift of the day not compensable); *Imada,* 138 F.3d at 1297 (police officers' travel to remote site for three-day training program not compensable, since it was "a normal, contemplated and indeed mandated incident of their employment" even though it occurred infrequently); *Vega v. Gasper,* 36 F.3d 417, 424–25 (5th Cir.1994) (farm workers' travel time on bus, sometimes as long as two hours, not compensable); 29 C.F.R. § 790.7(c) (non-compensable travel includes "an employee's ordinary daily trips between his home or lodging and the actual place where he does what he is employed to do"); *id.* § 785.37 (where an employee is given a special one-day assignment in another city, travel time may be compensable, except for the portion of it that would normally be excluded under "home-to-work" category, such as travel time from home to train station); Wage and Hour Div. Op. Letter, 1997 WL 998025 (Dep't Labor July 28, 1997) (travel by police officers between home and work outside of normal duty hours generally not compensable if "within the normal commuting area"); Wage and Hour Div. Op. Letter, 1995 WL 1032479 (Dep't Labor April 3, 1995) (employees' travel time between home and first work site of the day, even in employer's vehicle, not compensable if, among other things, the "work sites are within the normal commuting area of the employer's establishment").

We do not think the sources cited by the dissent—DOL opinion letters and another agency's interpretation of overtime pay requirements, *see infra* at [277–80]—support a different result here. Despite hints that distance and travel time might be important, most of the opinion letters address extraordinary situations (such as temporary training or special assignments) and find compensation required only when travel between work and home exceeds "ordinary" or "normal" levels. Since we interpret these terms subjectively, *see su-*

*pra,* we find no conflict between the opinion letters and our conclusion in this case. And the decision by the Office of Personnel and Management ("OPM") to limit non-compensable travel distances to 50 miles, while arguably laudable, in no way reveals the DOL's interpretation of the Act.

■ In sum, the regulations as currently written do not permit a construction that would require Grand Union to compensate Kavanagh for his time spent traveling to the first job of the day and from the last job of the day, regardless of the length of that distance or the benefit to Grand Union of having only one employee cover such a large geographic area. Because this extensive travel was a contemplated, normal occurrence under the employment contract entered into between Kavanagh and Grand Union, 29 C.F.R. § 785.35 forecloses Kavanagh's entitlement to compensation under the FLSA. Given the constraints on the judicial function, we decline to legislate an exception to this regulation.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is affirmed.

KORMAN, District Judge, dissenting:

The Fair Labor Standards Act requires the payment to all covered employees of a certain minimum wage, together with overtime compensation for employment in excess of forty hours at a rate not less than one and one-half times the regular rate at which each is employed. 29 U.S.C. § 207(a)(1) (1998). The purpose of the FLSA, passed in 1938, was to "guarantee[] compensation for all work or employment engaged in by employees covered by the Act." *Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123,* 321 U.S. 590, 602, 64 S.Ct. 698, 88 L.Ed. 949 (1944). "Congress here was referring to work or employment ... as those words are commonly used—as meaning physical or mental

exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." *Id.* at 598, 64 S.Ct. 698.

The Portal–to–Portal Act, which amended the FLSA in 1947, 29 U.S.C. §§ 251–262 (1998), represented an attempt by Congress to delineate certain activities which did not constitute work, and therefore did not require compensation. Its express purpose was to overrule an earlier holding of the Supreme Court, *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946), that "time spent in walking on the employer's premises to the work station and time spent in certain preliminary and incidental activities must be included in the compensable workweek." H.R.Rep. No. 71 (1947), *reprinted in* 1947 U.S.C.C.A.N. 1029, 1030.

An example of the "far-reaching result" of the "new doctrine" enunciated by the Supreme Court is the following "concrete situation" cited in the House Judiciary Committee Report:

[S]uppose an employee receiving a 70–cent regular hourly rate and who had already worked during that week the statutory maximum number of hours had also put in 30 minutes each day in the walking or other incidental activities [such as changing into work clothes] referred to by the Court. For a 5–day week, such employee could recover under section 16(b) $2.625 in addition to the wages previously agreed upon between him and his employer either by express agreement or by custom or practice. Assuming he worked 50 weeks in the year, the recovery for that period would be $362.50. There being no Federal statute of limitations covering the Fair Labor Standards Act, the claimant's right of recovery would extend back to the beginning of his employment, limited only by the effective date of the act (June 25, 1938), and by any applicable State statute of limitations. If the latter were 4 years, the liability of the employer would be $1,050, plus attorney fees and costs. Multiply that figure by the number of employees similarly situated and an idea will be obtained of the employer's potential liability. Apply these calculations to the total number of employers under the act and an idea will be gained as to the seriousness of the threat to the national economy.

*Id.* at 1031.

The concern reflected by this example is articulated in the express finding made by Congress in the Portal–to–Portal Act. Congress found "that the [FLSA] has been interpreted judicially in disregard of long-established customs, ... thereby creating wholly unexpected liabilities, immense in amount and retroactive in operation, ... with the results that, if ... claims arising under such interpretations were permitted to stand, (1) the payment of such liabilities would bring about financial ruin of many employers ... [and] (4) employees would receive windfall payments ... of sums for activities performed by them without any expectation of reward beyond that included in their agreed rates of pay." 29 U.S.C. § 251(a).

"The Act was intended to relieve employers from liability for preliminaries, most of them relatively effortless, that were thought to fall outside the conventional expectations and customs of compensation." *Reich v. New York City Transit Auth.*, 45 F.3d 646, 649 (2d Cir.1995). Specifically, to the extent here relevant, the Portal–to–Portal Act provided that an employer is not required to pay an employee overtime for activities such as "walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform." 29 U.S.C. § 254(a)(1) (1998).

The present case involves an employer, the Grand Union Company, which seeks to use this salutary exemption as a license to double its employee's workweek without

any additional compensation. The manner in which this end-run around the Fair Labor Standards Act is accomplished is outlined in the majority opinion. I summarize the facts here briefly to place in context the basis for my disagreement with the majority of the panel.

George Kavanagh was employed by the Grand Union Company during two periods between 1994 and 1996. Kavanagh's job was to service the refrigeration equipment in fifty-six Grand Union supermarkets in New York, New Jersey and Connecticut. Kavanagh was paid $10.00 per hour for an eight hour work day. Because of the far-flung location of Grand Union's operations, Kavanagh was often required to travel as many hours, if not more, than he worked in any day or week. Grand Union declined to pay Kavanagh for this travel, although it reimbursed him for gas and mileage. Grand Union would call Kavanagh at home and tell him which of its far-flung supermarkets he was to report to the next day or on some occasions the next week. Depending upon the location of the store, Kavanagh's travel time ranged between five and one-half and nine and one-half hours per day. Kavanagh, who lives on Long Island, does not seek compensation for travel to and from work in Nassau, Suffolk or Queens Counties. Instead, he seeks compensation for the extraordinary travel to more distant points in the tri-state area.

Grand Union asserts that this extraordinary travel is not compensable because it occurred before and after Kavanagh's regular work day. Moreover, Grand Union insists that it is entitled to avail itself of this exemption to the FLSA even though the distances traveled are not due to plaintiff's choice of where to live. Kavanagh would concededly be required to travel comparable distances to get to his work in New York City and Long Island if he moved to upstate New York, Connecticut or New Jersey.

The majority accepts Grand Union's defense. Nevertheless, it does not do so because of the language of the Portal–to–Portal Act. While the Act exempts travel to and from the "actual place of performance of the principal activity" which an "employee is employed to perform," where the performance of a job regularly involves travel time equal to or exceeding the time spent "working," the distinction between travel and work becomes elusive. *Cf.* 29 C.F.R. § 790.7(e) (1999) ("[W]here an employee performs his principal activity at various places (common examples would be a telephone lineman, a 'trouble-shooter' in a manufacturing plant, a meter reader, or an exterminator) the travel between those places is not travel of the nature described in this section, and the Portal Act has not [sic] significance in determining whether the travel time should be counted as time worked.").

More significantly, the Supreme Court has held that, "[w]here the literal reading of a statutory term would 'compel an odd result,'" we should pause to consider whether it was contemplated by Congress. *Public Citizen v. United States Dep't of Justice*, 491 U.S. 440, 454, 109 S.Ct. 2558, 105 L.Ed.2d 377 (1989) (quoting *Green v. Bock Laundry Mach. Co.*, 490 U.S. 504, 509, 109 S.Ct. 1981, 104 L.Ed.2d 557 (1989)). This holding has particular force here because the language of the Portal–to–Portal Act "is not free from ambiguity," and "the legislative history ... becomes of importance." *Steiner v. Mitchell*, 350 U.S. 247, 254, 76 S.Ct. 330, 100 L.Ed. 267 (1956). Clearly, as the legislative history discussed earlier indicates, this is not the kind of case that Congress contemplated when it exempted from compensable time "travel to and from the actual place of performance of the principal activity or activities" which an individual is employed to perform.

Rather than relying on the language of the Portal–to–Portal Act, the majority relies on what is at best an ambiguous interpretative regulation of the Department of Labor to justify the odd result in this case. The regulation says that employers

are not required to compensate employees for their "[n]ormal travel" between home and work. 29 C.F.R. § 785.35 (1999). This regulation, the majority holds, does "not permit a construction that would require Grand Union to compensate Kavanagh for his time spent traveling to the first job of the day and from the last job of the day, *regardless of the length of that distance or the benefit to Grand Union of having only one employee cover such a large geographic area." Supra,* at [273] (emphasis added).

This conclusion derives from the majority's interpretation of "normal travel" to encompass only "time normally spent by a specific employee traveling to work. The term does not represent an objective standard of how far most workers commute or how far they may reasonably be expected to commute. Instead, it represents a subjective standard, defined by what is usual within the confines of a particular employment relationship." *Supra,* at [272–73]. Stated another way, an employer can make unreasonable travel time not compensable simply by making it a regular part of the employee's job. Thus, the majority is able to say that, "[b]ecause this extensive travel [here] was a contemplated, normal occurrence under the employment contract entered into between Kavanagh and Grand Union, 29 C.F.R. § 785.35 forecloses Kavanagh's entitlement to compensation under the FLSA." *Supra,* at [273].

This interpretation of 29 C.F.R. § 785.35 cannot be right. The Fair Labor Standards Act was intended to invalidate "customs and contracts which allow an employer to claim all of an employee's time while compensating him for only a part of it." *Tennessee Coal, Iron & R. Co.,* 321 U.S. at 602, 64 S.Ct. 698. The interpretative regulation, as construed by the majority, simply undermines the Fair Labor Standards Act. Moreover, even if the construction of 28 C.F.R. § 785.35 accurately reflects what the Department of Labor intended, we owe it no deference. On the contrary,

we are free to hold that it is unreasonable to classify substantial travel, necessitated by the employer's needs and not the employee's choice of residence, as "normal travel between home and work."

Before addressing this issue in detail, a few words are warranted with respect to the nature of the interpretative regulation and the deference we owe it. There are two kinds of regulations to which different degrees of deference are due. The first is a "legislative" regulation in which "an agency is exercising its rule-making power to clarify an existing statute or regulation, or to create new law, rights, or duties in what amounts to a legislative act." *White v. Shalala,* 7 F.3d 296, 303 (2d Cir.1993). Because "legislative rule-making involves the agency's delegated power to make law through rules, it is subject to the public participation and debate that notice and comment procedures provide." *Id.* at 303–04. Once adopted, a legislative rule must be "given controlling weight unless [it is] arbitrary, capricious, or manifestly contrary to the statute." *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 844, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984); *see United States v. Haggar Apparel Co.,* 526 U.S. 380, 119 S.Ct. 1392, 1397, 143 L.Ed.2d 480 (1999).

The regulation at issue here is not a legislative regulation. Instead, it is part of a group of interpretative rules that are "not entitled to the same deference as norms that derive from the exercise of the Secretary's delegated lawmaking powers." *Martin v. Occupational Safety and Health Review Comm'n,* 499 U.S. 144, 157, 111 S.Ct. 1171, 113 L.Ed.2d 117 (1991); *General Elec. Co. v. Gilbert,* 429 U.S. 125, 141–43, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976) (both citing *Skidmore v. Swift & Co.,* 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944)); *see also Public Citizen,* 491 U.S. at 463 n. 12, 109 S.Ct. 2558; *New York City Employees' Retirement Sys. v. Securities Exch. Comm'n,* 45 F.3d 7, 14 (1995) (holding that "because the [SEC] no-action letter did not go through notice and com-

ment, and was only an informal statement by the SEC, courts will not accord great deference to it"). *See generally* 1 Kenneth Culp Davis & Richard J. Pierce, Jr., *Administrative Law Treatise* § 6.3, at 239–48 (3d ed.1994).

More specifically, the Supreme Court has expressly addressed the issue of the deference that must be accorded to administrative interpretations of the Fair Labor Standards Act, and has held that the weight such an interpretation is given "in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all of those factors which give it power to persuade, if lacking power to control." *Skidmore,* 323 U.S. at 140, 65 S.Ct. 161; *see also* 29 C.F.R. § 785.2 (1999) (incorporating *Skidmore* deference standard). In short, we are free to reject an interpretative regulation if we are not persuaded that it is sound.

The majority seemingly recognizes that it has such discretion here: it bases its decision to defer to 29 C.F.R. § 785.35 on the ground that it is "fundamentally sound and consistent with the statute." *Supra* at [272–73]. No reasons are offered to justify that conclusion. Instead, the focus of the majority opinion is on determining what the Department of Labor intended by the phrase "normal travel." Having determined the meaning of those words, the majority erroneously concludes that "the constraints on the judicial function" prevent us from holding that it does not apply to the circumstances here. *Supra* at [273]. The flaw in this analysis is obvious. Saying that an interpretation by an administrative agency is "fundamentally sound" does not make it so. Nor is the soundness of the interpretation enhanced by saying that it was made by an administrative agency.

I have already demonstrated that the interpretation the majority places on "normal travel" is fundamentally unsound because it undermines the protection af-

forded by the Fair Labor Standards Act without advancing the purposes of the Portal–to–Portal Act. This is not the only reason why the interpretation placed on 29 C.F.R. § 785.35 does not command deference. The phrase "normal travel" between home and work is an ambiguous term that hardly compels the construction placed on it by the majority. Certainly, nothing in the interpretative regulation expressly addresses the issue whether unreasonably long hours of travel constitute "normal travel." Nor is there any indication that the Department of Labor "devoted considerable thought to [this] issue" before it published the regulation. 1 Davis & Pierce, *supra,* § 6.3, at 243, or that it was even drawn with the circumstances here in mind. This consideration alone undermines any claim to deference. *Id.*

Moreover, the interpretative regulation, as construed by the majority, is inconsistent with informal opinion letters issued by the Department of Labor. *See General Elec. Co.,* 429 U.S. at 143, 97 S.Ct. 401 ("declin[ing] to follow administrative guidelines ... where they conflicted with earlier pronouncements of the agency"). The first opinion letter, dated November 15, 1990, addresses an inquiry whether time spent by a police officer traveling to a police academy for two weeks of training was compensable. The response from the Department of Labor reads in relevant part as follows:

> It is our opinion that the travel performed by the police officer at the beginning and the end of the workday from the officer's home to the municipal building and from there in a police vehicle to the Policy [sic] Academy is ordinary home to work travel and would not be considered to be compensable hours of work under the provisions of the FLSA. An employee who travels from home before his or her regular workday is engaged in ordinary home to work travel which is a normal incident of employment. (*We note that the approximate*

*25 mile distance between—is not an unreasonable distance for home to work commuting.*).

Department of Labor Wage and Hour Opinion Letter (November 15, 1990), *reprinted in* Gilbert J. Ginsburg et al., *Fair Labor Standards Handbook for States, Governments and Schools* App. III at 168 (1999) (emphasis added). The parenthetical included in the opinion letter suggests that travel of unreasonable distances is not "normal travel" between home and work.

This view is confirmed by a more recent opinion letter that is almost directly on point. It responds to a question "[w]hether travel time for the Project Coordinator from home to work site and work site back home [in the same state] is considered compensable time." Department of Labor Wage and Hour Opinion Letter, 1996 WL 1031779 (May 13, 1996). The response from the Department of Labor is as follows:

> Merely stating that the employees in question work in the same state where they live does not necessarily mean that all their work is "local." In this regard, our response to this question might be different for employees who live and work in Texas than for employees who live and work in Rhode Island. In Texas, our answer might flow from either 29 C.F.R. § 785.35 or 785.37, *depending on the distance involved;* in Rhode Island, § 785.35.

*Id.* (emphasis added).

The two regulations referred to in the response are instructive here. The regulation that would govern travel in a small compact state like Rhode Island, reflects the general rule that "[n]ormal travel from home to work is not worktime." 29 C.F.R. § 785.35 (1999). On the other hand, the regulation suggested as possibly providing the answer to home to work site travel in Texas is the one governing home to work on a special one-day assignment in another distant city. In pertinent part, it reads as follows:

> [A]n employee who works in Washington, DC, with regular working hours from 9 a.m. to 5 p.m. may be given a special assignment in New York City, with instructions to leave Washington at 8 a.m. He arrives in New York at 12 noon, ready for work. The special assignment is completed at 3 p.m., and the employee arrives back in Washington at 7 p.m. Such travel cannot be regarded as ordinary home-to-work travel occasioned merely by the fact of employment. It was performed for the employer's benefit and at his special request to meet the needs of the particular and unusual assignment. It would thus qualify as an integral part of the "principal" activity which the employee was hired to perform on the workday in question; it is like travel involved in an emergency call (described in § 785.36), or like travel that is all in the day's work (see § 785.38).

29 C.F.R. § 785.37 (1999).

The distance involved in the travel here is akin to that referred to in the May 13, 1996 Opinion Letter. Plaintiff here not only travels to distant work sites in a state more like Texas than Rhode Island, he also travels across state lines. Plaintiff alleges that, in addition to assignments in Brooklyn, Queens and Long Island, he "was required to travel from his home in Patchogue to ... upstate New York and Connecticut and several locations in New Jersey," that he "typically traveled between 500 and 1600 miles per week," and that his "travel time averaged between five and one half and nine and one half hours per day." (Appellant's Br. at 3–4). Nor does there appear to be any dispute that Grand Union benefitted from plaintiff's extra-long travel by not having to hire additional regional employees, and that plaintiff otherwise would not have been traveling such a great distance on a daily basis. Moreover, no matter where plaintiff chose to reside, certain of Grand Union's stores would have been a considerable distance from his home, necessitating

a long drive on the days when plaintiff was required to report to those remote stores. "Such travel cannot be regarded as ordinary home-to-work travel occasioned by the fact of employment." 29 C.F.R. § 785.37 (1999).

These are not the only instances in which the Department of Labor has found distance traveled to be determinative. The interpretative regulation dealing with emergency travel makes such travel compensable only if it involves travel over "a substantial distance." 29 C.F.R. § 785.36 (1999). Similarly, a more recent opinion letter places emphasis on the distance traveled. The letter responds to a question "whether the time spent by a police officer commuting to and from work in a marked police car outside his or her normal duty hours must be treated as hours worked under the FLSA." Department of Labor Wage and Hour Opinion Letter, 1997 WL 998025 (July 28, 1997). The answer by the Wage and Hour Division is as follows: "Generally, *subject to certain conditions (e.g. the travel must be within the normal commuting area),* the answer is no." *Id.* (emphasis added).

The Office of Personnel Management (OPM), which is also charged with administering the Fair Labor Standards Act, has taken a comparable position that is compelling here. Because the federal government, as an employer, eventually became subject to the Act, 29 U.S.C. § 203(e)(2)(A) (1998), the OPM promulgated regulations dealing with travel. While the applicable regulation is not a model of clarity, it too provides that normal home to work travel does not constitute "hours of work." 5 C.F.R. § 551.422(b) (1999). Federal Personnel Manual (FPM) letters, which were accepted as the authoritative view of OPM when it adopted the regulation, 45 Fed. Reg. 85659, 85661 (1980), make it clear that an employee is entitled to overtime compensation for time spent traveling where the employee is required to drive a vehicle to and from home and an assignment outside his official duty station.

FPM Letter No. 551–10 att. at 9 tbl. 4 (April 30, 1976) and FPM Letter No. 551–11 att. at 4 tbl. 1 (October 4, 1977); *see also* 5 C.F.R. § 551.422(a)(2) and (b). More significantly, section 551.422(d) provides that, for these purposes, the employee's official duty station (the location of his present work assignment), *cannot have a radius of more than fifty miles.* 5 C.F.R. § 551.422(d); *see also* 59 Fed.Reg. 66629, 66630 (1994) (discussing amendment of regulation to add subsection (d)). The only condition to which compensation for this time is subject is that, "[w]hen an employee travels directly from home to a temporary duty location outside the limits of his or her official duty station, the time the employee would have spent in normal home to work travel shall be deducted from [the compensable] hours of work." *Id.* § 551.422(b).

By limiting ordinary travel to no more than fifty miles, the Office of Personnel Management clearly rejects the view that the term "normal travel" does not represent "an objective standard of how far most workers … may reasonably be expected to commute." *Supra* at [272–73]. Instead, the OPM interpretation reflects a reasonable understanding that travel that is more in the nature of a journey is not normal travel. I accept the majority's suggestion that the OPM regulation "in no way reveals the DOL's interpretation of the [Fair Labor Standards] Act." *Supra* at [273]. Nevertheless, it does reveal an interpretation of the Act by another agency of the Executive Branch, which is relevant in determining whether the Department of Labor's interpretation "is fundamentally sound and consistent with the statute." *Supra* at [272–73].

The majority's interpretation of the phrase "normal travel" is likewise without any support in the case law. Not surprisingly, there do not appear to be any reported cases that involve the two factors that make this case so unusual: extraordinary travel which is not due to the employee's choice of residence and which is

undertaken solely for the benefit of the employer. There are two cases, however, that suggest, at least by implication, that these factors are determinative. *See Imada v. City of Hercules*, 138 F.3d 1294 (9th Cir.1998); *Vega v. Gasper*, 36 F.3d 417 (5th Cir.1994).

*Imada*, the most recent of the two, involved occasional travel (not more than once a year) to police training facilities outside of the City of Hercules where the plaintiffs worked. 138 F.3d at 1295. The Ninth Circuit—rejecting a contrary opinion letter of the Department of Labor—concluded that travel to and from such facilities was non-compensable because (1) the travel was "a normal, contemplated and indeed mandated incident of their employment as described in their collective bargaining agreement" and (2) "while the officers' training benefits the City, *it is at least equally beneficial to the officers*, who must attend POST-approved training in order to meet and maintain state law enforcement certification requirements." *Id.* at 1297 (emphasis added).

*Vega* involved farm workers, who traveled two hours each way on a bus operated by their employer, a labor contractor, to reach the fields where they worked, and were denied compensation for their travel time. 36 F.3d at 423. The reason for the two-hour trip in *Vega* was the distance between the farm workers' home and the location of the fields in which they worked. "The workers were *not* required to use [the employer's] buses to get to work in the morning. They chose where they lived and how to get to and from work. Not all of [the employer's] field workers rode his buses." *Id.* at 425 (emphasis in original). Under these circumstances, the Fifth Circuit held that "[t]he fact that the travel time was so long does not make it compensable under the statute." *Id.*

The present case is different from *Imada* because plaintiff derived no benefit from the extraordinary travel, and it is different from *Vega* because, no matter where plaintiff chose to reside, certain of Grand Union's stores would have been a considerable distance from his home, necessitating a long drive on the days when plaintiff was required to report to those remote stores. This is a critical distinction—not only between this case and *Vega*—but from the extra-long "normal" commuting that occurs throughout the economy. Indeed, it is this distinguishing fact that makes the daily travel in this case unique.

I note in conclusion that plaintiff here does not seek compensation for all of his travel time between home and work. He is entitled to be paid only for substantial travel time beyond the time he could reasonably be expected to travel from home to work. *Cf.* 5 C.F.R. § 551.422(b) (normal home to work travel time deducted from total travel time to determine compensable time). I would leave it to the trier of fact to decide what constitutes travel that is beyond that which is reasonable, taking into account evidence of average home to work commute time in the area, just as that issue is determined in cases specifically addressed by the interpretative regulations and opinion letters. *See, e.g.,* 29 C.F.R. § 785.36 (1999) (emergency travel over a "substantial distance" compensable). Because the majority chooses instead to affirm the judgment in favor of Grand Union, I respectfully dissent.